DEBORAH MATKE and ROLAND OBARSKI, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

        Defendant.

Case No.: 19-cv-1831

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.  This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION

2.  The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.  Plaintiff Deborah Matke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.  Plaintiff Roland Obarski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.  Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs, debts incurred for personal, family, or household purposes.

6. Defendant Midland Credit Management, Inc. ("Midland") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

7. Midland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Midland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Midland's website contains an "FAQ" webpage, which states:

## Who is Midland Credit Management (MCM)?

Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations. MCM has serviced millions of collection accounts over the years with the goal of helping consumers achieve financial freedom. MCM works with consumers and also partners with Midland Funding LLC, one of the nation's largest buyers of unpaid debt.

https://www.midlandcredit.com/faqs/ (last accessed November 27, 2019)

10. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

11. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough

2

gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at \*6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at \*7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at \*7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at \*13-15 (N.D. Ill Mar. 27, 2018); *Hordgev. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at \*12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at \*13-18 (E.D.N.Y. Aug. 15, 2018).

12.     The primary purpose of Midland's business, and Midland's principal purpose, is the collection of consumer debts.

13.     Midland is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars.  The 2013 10-K filing for Midland's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

14.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S.  As Encore paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars.  Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

15.     Midland's role generally is to service defaulted consumer debts purchased and held by Midland and its affiliates. Midland uses instrumentalities of interstate commerce, including the

3

mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.

16.     Neither Midland nor any of its affiliates purchase defaulted consumer debts with the purpose of selling them at a profit.  *See, e.g.*, https://www.midlandcreditonline.com/wp-content/uploads/2015/08/Consumer-Bill-of-Rights.pdf (last accessed: February 25, 2019) ("We do not resell accounts to third parties in the ordinary course of our business.").

17.     Even when acting as the purchaser of defaulted consumer debts, the primary purpose of Midland is debt collection.  *See, e.g., Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019) ("So long as a business's *raison d'etre* is obtaining payments on the debts that it acquires, it is a debt collector.  Who actually obtains the payment or how they do so is of no moment."); *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18.     Midland, along with Midland Funding, LLC, by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually.  Wisconsin Circuit Court Access (CCAP), for example, shows that Midland or its affiliate Midland Funding as a named party in over 1,600 small claims lawsuits against Wisconsin consumers so far in 2019 in Milwaukee County alone.  Upon information and belief, all or almost all of these actions were filed to collect consumer debt from Wisconsin residents.

19.     Upon information and belief, when Midland obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

20.	Midland is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts relating to Plaintiff Matke*

21.	On or about February 15, 2019, Midland mailed a debt collection letter to Plaintiff Matke regarding an alleged debt owed to Midland. A copy of this letter is attached to this Complaint as Exhibit A.

22.	Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a credit card.

23.	Upon information and belief, the alleged debt referenced in Exhibit A was originally owed to Capital One Bank (USA), N.A. ("Capital One").

24.	Plaintiff opened and used her Capital One account only for personal, family, and household uses, specifically purchases of household goods and services. Plaintiff Matke did not open the Capital One account for any business purpose.

25.	Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Matke inserted by computer.

26.	Upon information and belief, Exhibit A is a form debt collection letter, used by Midland to attempt to collect alleged debts.

27.	Upon information and belief, Exhibit A was the first written communication Midland sent to Plaintiff Matke regarding this alleged debt.

28.	The reverse side of Exhibit A includes the following representation which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

5

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

29.     Plaintiff Matke received and reviewed Exhibit A within a few days of its mailing.

30.     On or about March 8, 2019, Defendant mailed Plaintiff Matke another debt collection regarding the same alleged debt reference in Exhibit A. A copy of this letter is attached to this complaint as Exhibit B.

31.     Exhibit B states the following:

Midland Credit Management, Inc. wants to work with you to resolve the above-referenced account. This letter is to inform you that MCM is considering forwarding this account to an attorney in your state for possible litigation. Please respond by calling 877-654-1129 no later than 3/25/2019.

32.     Exhibit B further states:

Thank you for your cooperation in resolving this matter. Upon receipt of this notice, please call no later than 3/25/2019.

33.     Exhibit B demands the consumer "call no later than 3/25/2019 to pay this account."

34.     Moreover, the reverse side of Exhibit B states:

> **Important Contact Information**
> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive
> Suite 300
> San Diego, CA 92108
> **You may also call: 877-654-1129**

### *Facts relating to Plaintiff Obarski*

35.     On or about January 24, 2019, Midland mailed a debt collection letter to Plaintiff Obarski regarding an alleged debt owed to Midland. A copy of this letter is attached to this Complaint as Exhibit C.

36.     Upon information and belief, the alleged debt referenced in Exhibit C was incurred through the use of a credit card.

6

37.     Upon information and belief, the alleged debt referenced in Exhibit C was originally owed to Capital One.

38.     Plaintiff Obarski opened and used his Capital One account only for personal, family, and household uses, specifically purchases of household goods and services. Plaintiff did not open the Capital One account for any business purpose.

39.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Obarski inserted by computer.

40.     Upon information and belief, Exhibit C is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

41.     Upon information and belief, Exhibit C was the first written communication Defendant sent to Plaintiff Obarski regarding this alleged debt.

42.     The reverse side of Exhibit C includes the following representation which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

43.     Plaintiff Obarski received and reviewed Exhibit C within a few days of its mailing.

44.     On or about February 1, 2019, Defendant mailed Plaintiff Obarski another debt collection regarding the same alleged debt referenced in Exhibit C. A copy of this letter is attached to this complaint as Exhibit D.

45.     Exhibit D states the following:

Midland Credit Management, Inc., wants to work with you to resolve the above-referenced account. Please respond by calling 877-243-9173 no later than 2/16/2019.

46.     Exhibit D further states:

Thank you for your cooperation in resolving this matter. Upon receipt of this notice, please call no later than 2/16/2019 to pay this account.

47.     Moreover, the reverse side of Exhibit D states:

**Important Contact Information**
Send disputes or an instrument tendered as full satisfaction of a debt to:
Attn: Consumer Support Services
2365 Northside Drive
Suite 300
San Diego, CA 92108
You may also call: 877-243-9173

### *FDCPA Violations*

48.     The statements in Exhibits B & D, sent within the validation period and encouraging Plaintiff to submit disputes by phone, are inconsistent with 15 U.S.C. § 1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> > (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

49.     By encouraging the consumer to call Midland with any disputes, Exhibits B & D overshadow the disclosure that the most effective way for the consumer to trigger her rights under the FDCPA is by disputing the debt or requesting the name and address of the original creditor in writing.

8

50.     Exhibits B & D fail to clearly and unambiguously inform the unsophisticated consumer that, in order to invoke the right to require Midland to cease most collection activities until they provide verification of the debt, the consumer must make the request in writing. 15 U.S.C. § 1692g(a)(4). Instead, it tells the consumer to "you may also call."

51.     The practical effect of the request to call Midland is to discourage consumers from disputing debts in writing.

52.     This practical effect of discouraging consumers from submitting disputes in writing is greatly enhanced by the threat in Exhibit B that Midland may take legal action if the consumer does not call Midland by a date certain in the letter.

53.     An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided.  15 U.S.C. § 1692g(b).

54.     To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute.  15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

55.     The instruction in Exhibits B & D that the consumer may submit disputes via telephone is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Macy v. GC Servs. Ltd. P'ship.*, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-

15 (W.D. Ky. Sep. 29, 2016); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

56.     Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

57.     Exhibits B & D confusingly and misleadingly direct the consumer to notify Midland about disputes without informing the consumer that oral disputes do not trigger verification.

58.     Courts throughout the country have found that a debt collector overshadows the debtor's statutory validation rights by encouraging consumers to dispute their debts by telephone. *See Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist.

LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

59.     Furthermore, the overshadowing effect is compounded by the reference to call in a follow-up letter sent during the 30-day validation period (*e.g.* Exhibits B & D), because the follow-up letters do not reference the debtor's validation rights or explain the effect of disputing the debt orally or in writing. *Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-cv-214-NJ, 2018 U.S. Dist. LEXIS 197339 *12-15 (E.D. Wis. Nov. 20, 2018) (Receiving a follow-up letter several days after the initial letter, "the unsophisticated consumer likely does not remember the details of the first letter he received, including its instruction to submit disputes in writing to trigger verification. Thus, the second notice might lead an unsophisticated consumer to dispute the debt by telephone instead of in writing, thereby forfeiting the statutory right to validate the debt and compel PRA to cease collection activities."); *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *17-22 ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, combined with the specific text of a second letter, can create impermissible overshadowing or contradiction."); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) ("Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to

represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in *Caprio* set forth the 'please call' language on the front of the letter and 'relegated' the 'required Validation Notice' to 'the back side of the Collection Letter,' Certified Credit included 'PLEASE CALL' language in a letter mailed ten days before the expiration of the validation period—while 'relegating' the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in *Caprio* (which included an instruction in all capital letters directing *Caprio* to see the reverse side for important information), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.") (internal citations omitted); *see also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

60.     Midland did not effectively convey to the consumers their rights under the FDCPA. *McCabe*, 272 F. Supp. 2d at 743; *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

61.     The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor

gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

62.     Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7, 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

63.     For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendant's omission is a material violation of the FDCPA.  A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

64.     Midland's statements encouraging the consumer call with disputes about their alleged debts overshadows the validation notice. 16 U.S.C. § 1692g.

65.     Plaintiffs read Exhibits A-D.

66.     Plaintiffs were confused and misled by Exhibits A-D.

67.     The unsophisticated consumer would be confused and misled by Exhibits A-D.

68.     Plaintiffs had to spend time and money investigating Exhibits A-D, and the consequences of any potential responses to Exhibits A-D.

### The FDCPA

69.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist.

14

LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

70.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

15

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

71.     Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

72.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

73.     15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

74.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

75.     15 U.S.C. § 1692g(b), among other things, provides: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the

16

disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

## COUNT I – FDCPA

76.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77.     By encouraging consumers to call Midland with any disputes in a follow-up letter sent several days after the letter containing the validation notice, Exhibits B & D contradict and overshadow the disclosure that the consumer does not trigger her dispute rights effectively unless the dispute is communicated in writing.

78.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(b).

## CLASS ALLEGATIONS

79.     Plaintiffs bring this action on behalf of two classes.

80.     Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America, (b) who were sent a collection letter in the form represented by Exhibit A or Exhibit C to the complaint in this action, (c) and subsequently, within 30 days, sent a collection letter in the form of Exhibit B or Exhibit D to the complaint in this action, (d) seeking to collect a debt, incurred for personal, family, or household purposes, (e) where the subsequent letter was mailed between December 13, 2018 and December 13, 2019, inclusive, (g), and none of the letters was returned by the postal service.

81.     Class II ("Wisconsin Class") consists of (a) all natural persons the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A or Exhibit C to the complaint in this action, (c) and subsequently, within 30 days, sent a collection letter in the form of Exhibit B or Exhibit D to the complaint in this action, (d) seeking to collect a debt, incurred

17

for personal, family, or household purposes, (e) where the subsequent letter was mailed between December 13, 2018 and December 13, 2019, inclusive, (g), and none of the letters was returned by the postal service.

82.    Each class is so numerous that joinder is impracticable.

83.    Upon information and belief, there are more than 50 members of Class I.

84.    Upon information and belief, there are more than 50 members of Class II.

85.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether Defendant mailing Exhibits A-D violates the FDCPA.

86.    Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

87.    Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

88.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

89.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  December 13, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com